IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TAMI TAVAKE, *et al.*,

    Plaintiffs,                      No. CIV 2:12-cv-0041 KJM AC PS

    vs.

CHASE BANK, *et al.*,

    Defendants.                   FINDINGS & RECOMMENDATIONS

_____/

       Plaintiffs, proceeding in this action pro per, filed the operative first amended complaint ("FAC") on July 19, 2012. Pending before the court are motions to dismiss filed by defendant Sand Canyon Corp. (f/k/a Option One Mortgage Corp.) ("Option One") on August 15, 2012 and by defendants JPMorgan Chase Bank ("JPMorgan") (erroneously sued as JP Morgan Bank or Chase) and California Reconveyance Company ("CRC") on August 16, 2012. Plaintiffs oppose both motions. On review of the motions, the documents filed in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

## RELEVANT FACTUAL BACKGROUND

       On April 19, 2006, plaintiff Tami Tavake paid $895,439.87 as a down payment toward the purchase of a private residence located at 989 East Critchett, Tracy, CA 95304 ("the

Subject Property") and entered into a residential mortgage loan agreement for the remainder of the purchase price ($350,000.00) with Mariners Capitol, Inc. ("Mariners") secured by the Subject Property. Compl. ¶¶ 2, 20, 23; Option One Req. for Judicial Notice ("RJN"), Ex. 1.[1] Tami Tavake, who is listed as the sole owner of the property[2], secured payment of the principal and interest sums with a Deed of Trust ("DOT") that was recorded with the San Joaquin County Recorder's Office on April 25, 2005. Option One RJN, Ex. 1.

On August 13, 2007, Tami Tavake refinanced the earlier mortgage loan with Washington Mutual Bank, the predecessor-in-interest to defendant JPMorgan, see Compl. ¶ 6, in the amount of $902,000.00. Option One RJN, Ex. 3. On August 20, 2007, a second DOT was recorded with the San Joaquin County Recorder's Office. Id. CRC is listed as the Trustee on the DOT. Id.

On September 28, 2011, a Notice of Default and Election to Sell was recorded, JPMorgan RJN, Ex. 2; and on December 27, 2011, a Notice of Trustee's Sale was recorded, id., Ex. 3.

In November or December 2011, plaintiff Tami Tavake applied for a loan modification with JPMorgan. Compl. ¶ 39. The day after submitting the necessary documentation, plaintiffs received a copy of the Notice of Trustee's Sale. Id. ¶ 40. Despite this notice, JPMorgan representatives repeatedly assured plaintiffs that the bank was working with them on their application for a loan modification. Id. ¶¶ 41-51. Plaintiffs eventually rejected JPMorgan's proposed loan modification. See Pls.' Opp'n ¶ 13.

////

////

---

[1] The court takes judicial notice of documents referenced herein as matters of public record. Fed. R. Evid. 201; Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

[2] Plaintiffs, husband and wife, claim that they originally both signed the loan paperwork, but that an Addendum was later added to the transaction removing Sam Tavake from the loan offer. See Compl. ¶ 25; Exs. A-B (Doc. No. 16 at 27, 29).

RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed suit on January 6, 2012 and are proceeding on a FAC against defendants JPMorgan, Mariners[3], CRC, Option One, and Does 1-20 on claims of breach of contract, fraud and deceit and/or negligent misrepresentation, negligence, and violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. ¶ 2601 *et seq.* Plaintiffs accuse Mariners of using aggressive sales tactics to get Tami Tavake, who is alleged to be illiterate, to refinance the April 19, 2006 residential loan agreement; that Washington Mutual representatives encouraged plaintiff Tami Tavake "to do it"; that both of these defendants took advantage of plaintiff Tami Tavake's inability to read or write by misleading her into entering a loan that was ultimately detrimental to her in light of her inability to repay the loan; and that the defendants, collectively, violated RESPA in connection with plaintiffs' application for a loan modification. Other than naming CRC and Option One in the caption of the FAC, plaintiffs do not set forth any charging allegations as to either of these defendants in the body of the FAC.

On January 19, 2012, JPMorgan and plaintiffs filed a stipulation to stay both the foreclosure proceedings and the instant case pending resolution of plaintiff's loan modification application. See Doc. No. 9. On January 25, 2012, the stipulation was adopted, this case was stayed, and JPMorgan was granted until April 13, 2012 to file a responsive pleading. Doc. No. 10. The stay was ultimately extended to July 31, 2012. See Doc. Nos. 13, 15.

On or around January 2012, plaintiffs sent defendant JPMorgan a Qualified Written Request ("QWR")[4]. See Doc. No. 12 ¶ 8. On May 29, 2012, JPMorgan and plaintiffs filed a stipulation to, inter alia, extend the time for JPMorgan to respond to plaintiffs' QWR.
////

---

[3] Examination of the docket reflects that defendant Mariners has not yet been served with a copy of the FAC and has not otherwise appeared in this action.

[4] RESPA provides that a borrower may send her loan servicer a QWR requesting information relating to the servicing of her mortgage. See 12 U.S.C. § 2605(e).

Doc. No. 14.  The order adopting the stipulation granted JPMorgan until one week following expiration of the stay to respond to the QWR – that is, until August 7, 2012.  Doc. No. 15.

On August 14, 2012, plaintiffs filed with the court a copy of a letter entitled "Qualified Written Request" dated August 9, 2012 and addressed to each of the defendants. Doc. No. 26.  Therein, plaintiffs reference the QWR sent in January 2012, assert that they had not yet received a response to the QWR from JPMorgan, and request copies of documentation pertaining to Tami Tavake's loan, including "all reassignment notices, all note transfers, deeds, trust deed notes, riders, ballon [sic] payments, adjustable rate note, [and] transfer of servicing."

On August 15, 2012, defendant Option One filed a motion to dismiss.  On August 16, 2012, defendants JPMorgan and CRC filed a motion to dismiss.  Plaintiffs oppose both motions.  These matters are now fully briefed and ready for disposition.

## LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1974 (2007).  Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

The court is permitted to consider material properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not

4

contested and the complaint necessarily relies on them, and matters of public record. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001). Matters of public record include pleadings and other papers filed with a court. <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

DISCUSSION

A.   <u>Defendants' Motions to Dismiss</u>

Because the court's jurisdiction over this case hinges on the presence of an actionable federal claim, the court turns first to plaintiff's claim that defendants violated RESPA § 2605(e)(3) by providing information to consumer reporting agencies regarding overdue payments allegedly owed by plaintiffs that were related to their loan modification, many of which were neither late nor overdue. Compl. ¶ 75. While articulated as a claim against all defendants, this claim is in fact directed towards defendant JPMorgan as the lender and servicer of the loan originated on August 13, 2007. See Compl. at 16-17.

JPMorgan and CRC move for dismissal of plaintiffs' RESPA claim on the ground that plaintiffs fail to allege any violation of RESPA. To the extent plaintiffs allege that JPMorgan failed to respond to the QWR, JPMorgan asserts that it timely responded before the stipulated August 7, 2012 deadline. Finally, JPMorgan argues that plaintiffs fail to explain how the loan modification process violates RESPA.

At issue here is § 2605(e)(3), which provides that:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

12 U.S.C. § 2605(e)(3). A qualified written request is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B); see also 12 U.S.C. § 2605(i)(3) (defining "servicing" to mean the receipt of periodic payments pursuant to the terms of a loan).

While the FAC alleges that defendants violated § 2605(e)(3) by providing information to consumer reporting agencies during the period in which plaintiffs were attempting to obtain a loan modification, this allegation, on its own, is insufficient to assert a violation of § 2605(e)(3) – it is wholly conclusory and fails to describe when and to whom JPMorgan allegedly provided the information. See, e.g., Midouin v. Downey Sav. & Loan Ass'n, F.A., 834 F. Supp. 2d 95, 110-12 (E.D.N.Y. Sept. 28, 2011) (dismissing claim where plaintiff failed to allege when the servicer provided information to a consumer reporting agency); Jones v. Select Portfolio Servicing, Inc., 2008 WL 1820935, at *10 (E.D. Pa. Apr. 22, 2008) (dismissing claim under § 2605(e)(3) where plaintiff "makes no allegation that Defendant reported any information regarding Plaintiff's loan to consumer reporting agency at any time, let alone within the requisite sixty day period for a RESPA violation").

While the above deficiency could be cured by amendment, plaintiffs' RESPA claim is flawed in another, more fundamental, regard. That is, the FAC does not allege that plaintiffs mailed JPMorgan a QWR that would trigger the bank's duty to either respond or refrain from acting under RESPA. While the docket in this case refers to a January 2012 QWR, the FAC itself is devoid of any such reference. Moreover, such reference would not suffice to state a claim under RESPA because the January 2012 QWR did not involve the servicing of the loan.

For RESPA purposes, a QWR must relate to the servicing of a loan and not to a loan modification. See 12 U.S.C. § 2605(e). "A loan servicer only has a duty to respond if the

6

information request is related to loan servicing." Copeland v. Lehman Bros. Bank, FSB, 2010 WL 2817173, at *3 (S.D. Cal. July 15, 2010). The statute's implementing regulations define "servicing" as follows:

> Servicing means receiving any scheduled periodic payments from a borrower pursuant to the terms of any mortgage loan, including amounts for escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract. In the case of a home equity conversion mortgage or reverse mortgage as referenced in this section, servicing includes making payments to the borrower.

24 C.F.R. § 3500.2.

Plaintiffs' RESPA claim is premised on JPMorgan's actions during the pendency of plaintiffs' application for a loan modification. Because RESPA only obligates loan servicers to respond to or refrain from acting upon a borrower's QWR relating to the servicing of his or her loan, which does not include a loan modification, plaintiffs' RESPA claim fails. See Beacham v. Bank of America, N.A., 2012 WL 2358299, at * 3 (N.D. Tex. 2012). Cf. Philips v. Bank of Am. Corp., 2010 WL 1460824, at *4 (N.D. Cal. April 9, 2010) (finding defendant had no duty under RESPA to respond to plaintiff's QWR because it related to origination and modification of a loan, not its servicing); Williams v. Wells Fargo Bank, N.A., Inc., 2010 WL 1463521, at *3 (N.D. Cal. Apr. 13, 2010) (dismissing a RESPA claim where the plaintiffs' QWR asked for documents relating to their "options" for a loan modification, and noting that "[n]ot all requests that relate to the loan are related to the *servicing* of the loan" (emphasis in original)); Saucedo v. Bank of America, N.A., 2011 WL 6014008, at *2 (D. Or. Dec. 1, 2011) ("The denial of a loan modification is not 'servicing.'"); In re Salvador, 456 B.R. 610, 623 (Bankr. M.D. Ga. 2011) (holding that RESPA does not obligate servicers to respond to requests for information pertaining to a failed attempt to modify a loan; such information is "outside the scope of the term 'servicing' as defined in 24 C.F.R. § 3500.2."). In other words, taking as true plaintiffs' claim

that JPMorgan provided information regarding overdue payments to consumer reporting agencies during the pendency of an application for a loan modification, there is no RESPA violation because Section 2605(e)(3) does not prohibit JPMorgan from reporting to these agencies in this context.  Accordingly, defendants JPMorgan and CRC's motion to dismiss plaintiffs' RESPA claim should be granted.  Moreover, there being no indication that plaintiffs could amend to cure the above-stated deficiency, this claim should be dismissed without leave to amend.[5]

In its motion to dismiss, Option One seeks dismissal of plaintiff's federal claim as untimely.  As to this argument, the court notes that 12 U.S.C. § 2614 provides two different statutes of limitation for various violations of RESPA.  Specifically, actions for violations of 12 U.S.C. § 2605 must be brought within three years of the alleged violation, whereas actions for violations of 12 U.S.C. §§ 2607 or 2608 must be brought within one year.  See 12 U.S.C. § 2614.  Here, the three-year statute of limitation applies because plaintiffs' RESPA claim is premised on JPMorgan's purported violation of section 2605(e)(3).  Because the record refers to the mailing of a QWR in January 2012, the court finds that plaintiffs' RESPA claim falls within the relevant three-year time period, and Option One's motion to dismiss this claim should be denied.

B.     Leave to Amend

In their opposition, plaintiffs request leave to amend the FAC to allege more claims against the defendants, including due process and equal protection claims. While there exists a liberal policy in favor of amendments, see Foman v. Davis, 371 U.S. 178, 182 (1962), this policy is subject to some limitations.  The United States Supreme Court has established that amendment should be granted unless the court determines that there has been a showing of: (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to

---

[5] The recommendation for dismissal of plaintiffs' RESPA claim without leave to amend is unaffected by plaintiffs' failure to serve defendant Mariners, the lender of plaintiff's original April 19, 2006 loan.

cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. Foman, 371 U.S. at 182; see, e.g., United States v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001). "Generally, this determination should be performed with all inferences in favor of granting the motion." Griggs v. Pace Am. Group, Inc., 170 F.3d 877, 880 (9th Cir. 1999) (citing DCD Programs, LTD. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987)).

Plaintiffs' proposed due process claim stems from the defendants' alleged refusal to comply with California Civil Code § 2923.5 to deliver a certified notice to Tami Tavake before filing a Notice of Default and Notice of Trustee Sale. Plaintiffs do not specify the predicate for their equal protection claim. Regardless, "[i]ndividuals and private entities are not normally liable for violations of most rights secured by the United States Constitution." Morse v. North Coast Opportunities, Inc., 118 F.3d 1338, 1340 (9th Cir. 1997). In the context of foreclosure actions, the Ninth Circuit has held that a plaintiff cannot pursue a constitutional claim against a private lender. See Apao v. Bank of New York, 324 F.3d 1091, 1095 (9th Cir. 2003) (bank not liable for constitutional violation based on foreclosure action); Rank v. Nimmo, 677 F.2d 692, 702 (9th Cir. 1982) ("We thus conclude that foreclosure by a private lender of a mortgage in a federal mortgage guaranty program does not involve federal action sufficient to invoke the due process clause of the Fifth Amendment."). In light of the futility of amendment, plaintiff's request for leave to amend to state additional federal claims should be denied.

Having dismissed plaintiff's federal claim, the undersigned will recommend that the court decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c).

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant's Option One's August 15, 2012 motion to dismiss be denied;

2. Defendants JPMorgan and CRC's motion to dismiss be granted with respect to plaintiff's RESPA claim;

3. Plaintiff's RESPA claim be dismissed without leave to amend; and

4. Plaintiff's remaining state law claims be dismissed without prejudice to the filing of an action in state court.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 5, 2012.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;tava0041.mtd