UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMI TAVAKE, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>JPMORGAN CHASE BANK, et al.,<br><br>    Defendants. | No. 2:12-cv-0041 KJM AC PS<br><br><br>ORDER AND<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiffs Tami Tavake and Sam Tavake, proceeding in this action pro per, filed the operative second amended complaint ("SAC") on April 22, 2013. Pending before the court is a motion to dismiss filed by defendants JPMorgan Chase Bank ("JPMorgan") (erroneously sued as JP Morgan Bank or Chase) and California Reconveyance Company ("CRC") on May 9, 2013. Plaintiffs oppose the motion. The court has determined that the matter shall be submitted upon the record and briefs on file and accordingly, the date for hearing of this matter shall be vacated. Local Rule 230. On review of the motion, the documents filed in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

RELEVANT ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

On April 18, 2006, plaintiff Tami Tavake entered into a mortgage loan agreement for $350,000.00 with Mariners Capitol, Inc. ("Mariners") secured by real property located at 989 East Critchett, Tracy, CA 95304 ("the Subject Property"), a property valued at $1,200,000.00. SAC

¶¶ 1-3.  Plaintiffs' down-payment on the Subject Property was nearly $900,000.00.  Id. ¶ 1.

On August 13, 2007, Tami Tavake refinanced the mortgage loan with Washington Mutual Bank, FA, the predecessor-in-interest to defendant JPMorgan[1], in the amount of $902,000.00.  SAC ¶ 5; Defs.' Req. for Judicial Notice ("RJN") Exs. 1-2.[2]  On August 20, 2007, a Deed of Trust was recorded with the San Joaquin County Recorder's Office listing CRC as the Trustee and Tami Tavake as the Borrower, "a married woman as her sole and separate property."  RJN Ex. 1.  Plaintiffs accuse representatives of Washington Mutual Bank of fraudulent conduct.  SAC ¶ 14.

On September 26, 2011, CRC recorded a Notice of Default and Election to Sell against the Subject Property.  RJN Ex. 3.  According to this Notice, plaintiff was $48,055.77 in arrears as of September 23, 2011.  Id.; SAC ¶ 9.  Tami Tavake disputes this amount, claiming she was only $38,000.00 in arrears.  SAC ¶ 9.  On December 27, 2011, a Notice of Trustee's Sale was recorded by CRC with intent to sell the Subject Property on January 17, 2012.  SAC ¶ 11; RJN Ex. 4.

RELEVANT PROCEDURAL BACKGROUND

Plaintiffs, who initiated this action on January 6, 2012, filed a first amended complaint on July 19, 2012 accusing multiple defendants, including JPMorgan and CRC of violating state law and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.  The RESPA provision at issue in the first amended complaint concerned a mortgage loan servicer's failure to respond to a Qualified Written Request ("QWR")[3].  See 12 U.S.C. § 2605(e)(2).  On

---

[1] JPMorgan acquired the assets of Washington Mutual Bank on September 25, 2008 from the FDIC.  See RJN Ex. 2.

[2] The court takes judicial notice of documents referenced herein as matters of public record.  Fed. R. Evid. 201; Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

[3] A qualified written request is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

2

consideration of the defendants' motions to dismiss, ECF Nos. 21, 27, the undersigned recommended that plaintiffs' sole federal claim brought pursuant to § 2605(e)(2) be dismissed for failure to state a claim, plaintiffs be denied leave to file a second amended complaint, and the court decline to exercise jurisdiction over plaintiffs' state law claims.

On March 30, 2013, the Honorable Kimberly J. Mueller adopted in part the findings and recommendations on receipt of plaintiffs' objections:

> In their objections to the findings and recommendations, plaintiffs request leave to amend their complaint to allege that JP Morgan violated RESPA because it did not notify plaintiffs that it was the new servicer of their loan. (ECF 40 at 2.) "Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). Although allowing plaintiffs to amend their complaint to state a claim under section 2605(e) would be futile for the reasons explained in the findings and recommendations, it is not clear at this point that plaintiffs cannot state a claim under section 2605(b)(1). Plaintiffs are granted leave to amend the RESPA cause of action in their complaint to state a claim under 2605(b)(1) only. If they are able to state such a federal claim, they may be able to pursue their state law claims as well.

ECF No. 45 at 2. Accordingly, plaintiffs were granted leave to amend their complaint to state a claim under RESPA § 2605(b)(1) only.

Plaintiffs have now filed a SAC against defendants JPMorgan and CRC for violation of § 2605(b)(1) of RESPA and for violations of California law regarding the non-judicial foreclosure of the Subject Property. As to their federal claims, plaintiffs accuse defendant JPMorgan of failing to provide notice of its September 25, 2008 purchase and acquisition of Washington Mutual Bank. See RJN Ex. 2. They allege that this failure to provide notice resulted in their inability to send a QWR to dispute money actually owed on the mortgage. SAC ¶¶ 7, 15. Plaintiffs also seek to hold JPMorgan liable for the conduct of Washington Mutual representatives pursuant to the September 25, 2008 Purchase and Assumption ("P&A") Agreement.

On May 9, 2013, defendants JPMorgan and CRC filed the instant motion to dismiss. ECF NO. 48. Plaintiffs have filed an opposition to the motion. ECF No. 49.

////

LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

The court is permitted to consider material properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not contested and the complaint necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Matters of public record include pleadings and other papers filed with a court. Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

DISCUSSION

A.   Federal Claims

The court will focus its analysis on plaintiffs' federal claims brought pursuant to 12 U.S.C. § 2605(b)(1)[4] and the P&A Agreement, as the court's jurisdiction is premised upon these

---

[4] In the SAC, plaintiffs refer to both 12 U.S.C. § 2605(b)(1) (failure to provide notice) and 12 U.S.C. § 2605(e)(2) (failure to respond to a QWR). Plaintiffs, however, are barred from reasserting a claim under § 2605(e)(2) per Judge Mueller March 30, 2013 order adopting in part the undersigned's findings and recommendations. See ECF No 45 at 2 ("[A]llowing plaintiffs to

claims. Defendants seek dismissal of plaintiffs' RESPA claim on the grounds that it is time-barred and that plaintiffs fail to identify any actual damage. They also seek dismissal of plaintiffs' claim that JPMorgan is liable for the conduct of Washington Mutual Bank employees prior to its acquisition of the failed bank.

1. Violation of the Real Estate Settlement Procedures Act

    a. Plaintiffs' RESPA Claim is Untimely

RESPA requires a lender to provide notice to the borrower when the loan servicer changes. 12 U.S.C. § 2605(b)(1). Such notice must be given "to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan" or, under limited circumstances, "not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan." 12 U.S.C. §§ 2605(b)(2)(A), (B). The statute of limitations for a violation of this RESPA provision is three years. Gomez v. Wells Fargo Home Mortg., 2011 WL 5834949, at *5 (N.D. Cal. Nov. 21, 2011).

Plaintiffs assert that JPMorgan failed to provide notice of the change of service upon its acquisition of Washington Mutual from the FDIC as receiver. This change of service occurred on September 25, 2008. See RJN Ex. 2. Under Section 2605(b)(2)(A) & (B), the notice should have been provided, at the latest, by October 25, 2008. See 12 U.S.C. §§ 2605(b)(2)(A) & (B). Plaintiffs, however, filed suit on January 6, 2012, beyond the three-year statute of limitations. Accordingly, their claim is indeed untimely. Additionally, although equitable tolling applies to RESPA claims, see Blaylock v. First Am. Title Ins. Co., 504 F. Supp. 2d 1091, 1106-07 (W.D. Wa. 2007), plaintiffs have not alleged "specific facts explaining the failure to learn the basis for the claim within the statutory period . . . ." Pederson v. Greenpoint Mortg. Funding, Inc., 900 F. Supp. 2d 1071, 1079 (E.D. Cal. Sept. 30 2012) (quoting Abels v. Bank of America, N.A., 2012 WL 691790, at *3 (N.D. Cal. Mar. 2, 2012)). Accordingly, the court finds plaintiffs' RESPA claim to be time-barred.

---

amend their complaint to state a claim under section 2605(e) would be futile for the reasons explained in the findings and recommendations"). Plaintiffs are thus authorized to assert a claim pursuant to § 2605(b)(1) only. Accordingly, the court will disregard all references in the SAC and in plaintiffs' opposition to violations of § 2605(e)(2).

5

b.      Plaintiffs' Allegation of Injury Fails

Defendants next contend that plaintiffs fail to allege any pecuniary loss attributable to the violation, and that this is fatal to their RESPA claim. Under RESPA, plaintiff must, at a minimum, also allege that the breach resulted in actual damages. See 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with this section shall be liable to the borrower . . . [for] any actual damages to the borrower as a result of the failure."); 24 C.F.R. § 3500.21(f)(1)(i); Cuaresma v. Deustche Bank Nat. Co., 2011 WL 4727805, at *5 (N.D. Cal. Oct. 7, 2011); Padilla v. One West Bank, 2010 WL 5300900, at *6 (N.D. Cal. Dec. 20, 2010) ("The plaintiff must include, at the pleading stage, a demonstration of some actual pecuniary loss."); Farias v. FCM Corp., 2010 WL 4806894, at *3 (S.D. Cal. Nov. 18, 2010) ("Under section 2605(f)(1), plaintiff must, at a minimum, allege the 'actual damages' he suffered as a result of Litton's failure to respond to his QWR."). "Absent factual allegations suggesting that Plaintiffs suffered actual damages, plaintiffs' RESPA claim is insufficiently pled and subject to dismissal." Amaral v. Wachovia Mortg. Corp., 692 F. Supp. 2d 1226, 1232 (E.D. Cal. 2010); see also Hussein v. Wells Fargo Bank, 2011 WL 2215815, at *3 (E.D. Cal. June 6, 2011) (recommending dismissal of RESPA claim, in part, because plaintiff failed "to allege what actual damages he suffered as a result of the alleged failure to respond to the QWR"); Lemieux v. Litton Loan Servicing, 2009 WL 5206641, at *3 (E.D. Cal. Dec. 22, 2009) ("Plaintiffs have not plead facts showing they suffered actual damages. Their failure to do so defeats their RESPA claim."); Garcia v. Wachovia Mortgage Corp., 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (dismissing RESPA claim because plaintiff "failed to allege damages under Section 2605")).

Plaintiffs assert that they were damaged by JPMorgan's failure to provide notice under § 2605(b)(1). They claim that, without a telephone number of a representative who could provide assistance to them, they were denied the ability to send a QWR to JPMorgan to dispute money actually owed on the mortgage. SAC ¶ 23. JPMorgan argues that, despite plaintiffs' allegations that they did not have contact information for JPMorgan or know that JPMorgan was the servicer, plaintiffs actually were aware of the transfer of service to JPMorgan very soon after September 25, 2008, as evidenced by the filings in this case. For example, in plaintiffs' verified first

6

amended complaint, plaintiffs claimed that they entered into a trial loan modification plan with JPMorgan on January 1, 2009, only three months after the bank's purchase and acquisition of Washington Mutual Bank.  See First Am. Compl. ¶ 45.  In addition, attached to plaintiffs' January 13, 2012 Motion for Temporary Restraining Order are two letters from JPMorgan to plaintiff Tami Tavake regarding the latter's request for a loan modification.  See ECF No. 7-1 at 9 (April 22, 2011 letter from "Chase Fulfillment Center" to plaintiff asking for documentation to process request for modification); 10 (April 21, 2010 letter from "Chase Home Finance LLC" to plaintiff regarding home loan modification program; this letter includes a phone number and email address of a Chase Home Finance LLC representative).

On this record, the court finds that plaintiffs were aware of JPMorgan's servicing of their mortgage loan very soon after September 25, 2008, and that they were in possession of contact information for JPMorgan as early as three months after JPMorgan's acquisition of Washington Mutual Bank.  Since the Notice of Default as to the Subject Property was not filed until September 26, 2011, plaintiffs' claim that they lacked contact information for the servicer of their loan is disingenuous.  This claim must therefore be dismissed without leave to amend.

2. JPMorgan's Liability Under the Purchase and Assumption Agreement

Plaintiffs also claim that JPMorgan is liable for the allegedly fraudulent conduct of employees of its predecessor-in-interest, Washington Mutual Bank.  For the reasons set forth here, this claim is jurisdictionally barred.  Because the allegedly fraudulent conduct precedes JPMorgan's acquisition of Washington Mutual Bank, the claim must be brought against the FDIC.  Any claim against the FDIC must be preceded by an administrative claim pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").

a. Jurisdictional Bar

Under FIRREA, courts lack subject matter jurisdiction to hear a claim against a defunct bank taken into receivership by the FDIC unless the plaintiff has complied with an administrative claims process.  McCarthy v. FDIC, 348 F.3d 1075, 1077-78 (9th Cir. 2003); Intercontinental Travel Mktg. v. FDIC, 45 F.3d 1278, 1282 (9th Cir. 1994) ("No court has jurisdiction over the claim until the exhaustion of this administrative process").

The FIRREA, codified in relevant part at 12 U.S.C. § 1821(d) (3)-(10), "provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate 'to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks.'" Benson v. JPMorgan Chase Bank N.A., 673 F.3d 1207, 1211 (9th Cir. 2010) (quoting McCarthy, 348 F.3d at 1079). This administrative claims process gives rise to FIRREA's jurisdictional bar, which provides:

> (D) Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). "The phrase 'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the administrative claims process has been completed." McCarthy, 348 F.3d at 1078 (citations omitted); accord Benson, 673 F.3d 1207, 2012 WL 917579, at *4 ("FIRREA requires that a plaintiff exhaust these administrative remedies with the FDIC before filing certain claims.").

In Benson, the Ninth Circuit Court of Appeals clarified that FIRREA's jurisdictional bar applies to claims against: (1) failed banks; (2) the FDIC, acting as the receiver for a failed bank; and (3) "a purchasing bank when the claim is based on the conduct of the failed institution." Benson, 673 F.3d 1207, 2012 WL 917579, at *6-7. However, the Court of Appeals held that "[c]laims of independent misconduct by an institution that purchases a failed bank are not covered by FIRREA's exhaustion requirement." Id. at *7; see also id. at *8 ("Purchase of a failed bank does not buy an institution immunity to continue in its predecessor's malfeasance.").

Here, because plaintiffs claim that JPMorgan is responsible for the conduct of Washington Mutual Bank representatives, FIRREA's administrative exhaustion requirement applies. See 12

U.S.C. § 1821(d)(13)(D)(ii).  Plaintiffs have not alleged that Tami Tavake exhausted her administrative remedies with the FDIC as required by FIRREA.  Accordingly, this court lacks jurisdiction over plaintiffs' claim that JPMorgan is liable for the conduct of Washington Mutual agents or representatives.

        b.      <u>No Liability Under the P&A Agreement</u>

Moreover, even if the court did have jurisdiction to hear this claim, plaintiffs may not maintain an action against JPMorgan for Washington Mutual Bank's conduct pursuant to Section 2.5 of the September 25, 2008 P&A Agreement.

> A number of federal courts have now held that [the] P&A Agreement relieves Chase of liability for borrowers' claims against Washington Mutual. These courts reason that Chase became a successor to Washington Mutual by executing the P&A Agreement; the P&A Agreement governs the status of Chase as successor; and Article 2.5 of the P & A Agreement establishes that Chase did not assume liability for borrowers' claims related to loans made by Washington Mutual prior to September 25, 2008. On this basis, the district courts . . . have repeatedly dismissed TILA and RESPA claims brought against Chase because the P&A Agreement specifies that Chase did not assume liability for such claims.

<u>McCann v. Quality Loan Serv. Corp.</u>, 729 F. Supp. 2d 1238, 1241-42 (W.D. Wash. 2010) (citing <u>Danilyuk v. JP Morgan Chase Bank, N.A.</u>, 2010 WL 2679843 (W.D. Wash. July 2, 2010)); <u>Federici v. Monroy</u>, 2010 WL 1345276 (N.D. Cal. Apr. 6, 2010); <u>see also</u> <u>Biggins v. Wells Fargo & Co.</u>, 266 F.R.D. 399, 414-15 (N.D. Cal. 2009) (relying on P&A Agreement, court dismissed claims against Chase where plaintiff's theory of liability stemmed from Washington Mutual Bank's conduct).  In light of this abundant authority concluding that the P&A Agreement absolves defendant JPMorgan from liability for Washington Mutual Bank's pre-seizure conduct, the court finds that to the extent plaintiff alleges JPMorgan is liable for Washington Mutual Bank's conduct, the P&A Agreement operates to shield JPMorgan from liability.  This claim must therefore also be dismissed without leave to amend.

B.      <u>Supplemental Jurisdiction</u>

Having recommended that plaintiff's federal claim be dismissed, the undersigned will recommend that the court decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c).

Based on the foregoing, IT IS HEREBY ORDERED that the July 10, 2013 hearing on defendants' motion is vacated; and

IT IS HEREBY RECOMMENDED that:

1. Defendants JPMorgan and CRC's motion to dismiss be granted with respect to plaintiffs' federal claims;

2. Plaintiffs' federal claims be dismissed without leave to amend; and

3. Plaintiff's remaining state law claims be dismissed without prejudice to the filing of an action in state court.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 28, 2013

\_\_\_\_/s/_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;tava0041.mtd.sac